PERRY DAVIS. v. GEORGE KENDALL.

The inventor of an, unpatented medicine has no exclusive right to make and vend the same; but, if others make and vend it, they have no right to vend it as the manufacture of the inventor, nor to adopt his label or trade-mark, nor one so like his as to lead the public to suppose the article, to which it is affixed, is the manufacture of the inventor, and they are equally liable for the damage whether such trade-mark be adopted by fraud or mistake.

The plaintiff, having first applied the name " Pain-Killer" to a medical compound made and sold by himself, it was held that the application of the same name to a similar compound, sold by the defendant, bottled and labelled in a somewhat similar way, was an infringement of the plaintiff's trade-mark.

THIS was an action on the case against the defendant for pirating the plaintiff's trade-mark. It appeared that the plaintiff was the original inventor of a medical compound sold by him, by the name of Pain-Killer, that he had been the first to apply this word to such a compound; and that, after said compound had become extensively and favorably known, the defendant manufactured and sold a similar compound, by the name of "J. A. Perry's Vegetable Pain-Killer." The defendant's medicine was put in bottles of similar size with those of the plaintiff, though of somewhat different shape. The plaintiff's label was a paper pasted on the body of the bottle, on the upper part of which was the word Pain-Killer printed in a scroll, below which were the words " Manufactured by Perry Davis," and below this an engraving, intended to

represent the plaintiff, surrounded by an oval circle bounded on either side by a simple wreath, and having in its lower margin the words, " The original inventor, No. 74 High St., Providence." Below the circle, in small type, were the words " copy-right secured," and the price of the bottle, and, at the bottom of the label, the words, " Destroy this label as soon as the bottle is empty. This will prevent fraud." The defendant's label was similarly affixed to the bottle ; at the upper part were the words, " J. A. Perry's Vegetable Pain-Killer," underneath which was represented the bust of a man, and beneath this the words, " Manufactured in Providence, R. I. Price 30 cents. Copyright secured." The devices on the plaintiff's label were on a light ground, those on the defendant's upon a dark ground. The case was tried to the Court upon an agreed statement of facts.

*Carpenter* and *Bradley*, for the plaintiff, contended, that whenever an article of a specific manufacture was universally sold with a given mark upon it, that mark, whether a letter, a figure, a stanza of poetry, or a name, became the vendor's trade-mark, and invested him with a right of property which was infringed, whenever the same mark was so applied to articles of another's manufacture as to mislead the unwary public to purchase them, in the belief that they were purchasing the article to which such mark was originally applied. The word Pain-Killer was the plaintiff's trade mark, he having first invented the term and used it in this particular way, and though he had thus acquired no exclusive right to the use of the word generally, he had an exclusive right to its use as by him applied. If the defendant had used this term in such a way as to mislead the public and gain

for himself the benefit of a reputation which belonged solely to the plaintiff, the plaintiff was entitled to judgment, and whether such use by the defendant was intentional or accidental was immaterial. (23 Am. Jurist, 138; 1 Chitty's Pract. 731; 2 Story's Eq. Jur. § 951.) *Taylor v. Carpenter,* (3 Story, 458.) *Colts v. Colbrook,* (2 Sand. 586.) *Knot v. Morgan,* (2 Keen. 213.) *Thomson v. Winsor,* (19 Pick. 214.) *Millington v. Fox,* (3 M. & Cr. 338; 21 Merch. Mag. 199; 14 Ibid. 330.)

*Ames,* for the defendant, contended, that there was a distinction between trade-marks and names ; a trade-mark was a mark used as a symbol to designate articles made or sold by a particular person ; names were either purely arbitrary, or the names of the maker or vendor, or such as were descriptive of the article ; if one man adopted the trade-mark of another, which had acquired a reputation, or either of the first two classes of names, he manifestly could have done it only for the purpose of benefiting by the reputation of the articles, the trade-mark or name on which were adopted, and so if the defendant had labelled his article " Perry Davis's Pain-Killer," or had imitated the plaintiff 's label, so that the public would be deceived, he would be liable. But the word Pain-killer was a term descriptive of the article sold, and, as there was no patent right to the English language, so the plaintiff could not prohibit the application of a common English word to an article described by it. The analysis of the cases showed that the manufacturer of an article had no right to any particular name, but must further show that the person using such name intended to pass off his manufactures as those of the person whose name or mark he used, or that he had used this name or mark in such a way that people

of ordinary intelligence would be misled. *Blofield* v. *Payne*, (4 Barn. & Ad. 410.) *Blanchard* v. *Hill*, (2 Atk. 484.) *Millington* v. *Fox*, (3 M. & Cr. 339.) *Bell* v. *Locke*, (8 Paige, 75.) *Sykes* v. *Sykes*, (3 Barn. & Cress. 541.) *Colts* v. *Holbrook*, (2 Saund. 594.)

GREENE, C. J. delivered the opinion of the Court.

The plaintiff has no patent and no exclusive right to the compound called Pain-Killer. He invented the compound and gave it the name Pain-Killer, and this seems to have been the first application of that term to a medical compound. The plaintiff, though not entitled to the compound, is entitled to his trade-mark, and the law recognizes and will protect this right.

Trade-marks may be, first, the name of the maker; second, symbolical; third, the name of the compound. Of this last kind is the trade-mark of the plaintiff, PAIN-KILLER.

All are entitled to make and vend this compound, and to vend it as a similar article to that made and sold by the plaintiff; but no one, but the plaintiff, has a right to sell it as a medicine manufactured by the plaintiff.

The adoption of the same label as the plaintiff's, will, of course, be actionable; and so the adoption of a label so like the plaintiff's as to mislead the public, would be actionable.

If the difference be merely colorable, it will not avail the defendant. But if the defendant state in his label, that the article which he sells was made by himself, although he calls it by the same name as the plaintiff, he will not be liable; because he has a right to make and vend the compound, if he vends it as his own, and not

as made by the plaintiff. *Canham* v. *Jones*, (2 Vesey & Beames, 218.)

If the defendant, without fraud, use the trade-mark of the plaintiff, he is still liable. If the right be violated, it matters not whether it be by fraud or by mistake. *Millington* v. *Fox*, (3 Mylne & Craig, 339.)

The whole question in this case is, whether the defendant's label is liable to deceive the public, and to lead them to suppose they are purchasing an article manufactured by the plaintiff, instead of the defendant. The agreed statement of facts does not find that the defendant's label has deceived any one, and I do not think it will do so, but my associates think otherwise, and judgment must, therefore, be returned for the plaintiff.

*Judgment for the plaintiff.*